1

```
1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK
2
   - - - - - - - - - - - - - - - -X
3  UNITED STATES OF AMERICA,      : 18-CR-408 (BMC)
                                  :
4          Plaintiff,             :
                                  : United States Courthouse
5       -against-                 : Brooklyn, New York
                                  :
6  WEI MEI GAO,                   :
       also known as "Vivian"     :
7      and "Weimei,"              :
                                  : Thursday, November 5, 2020
8          Defendant.             : 12:30 p.m.
   - - - - - - - - - - - - - - - -X
9

10

11

12          TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
             BEFORE THE HONORABLE BRIAN M. COGAN
13              UNITED STATES DISTRICT JUDGE

14              A P P E A R A N C E S :

15  For the Government:       SETH D. DuCHARME, ESQ.
                              Acting United States Attorney
16                            Eastern District of New York
                              271 Cadman Plaza East
17                            Brooklyn, New York 11201
                              BY:  WILLIAM CAMPOS, ESQ.
18                                 Assistant United States Attorney

19

20   For the Defendant:       STACEY A. VAN MALDEN, ESQ.
                              5114 Post Road
21                            Bronx, New York 10471

22  Court Reporter:           DAVID R. ROY, RPR
                              225 Cadman Plaza East
23                            Brooklyn, New York 11201
                              drroyofcr@gmail.com
24
    Proceedings recorded by Stenographic machine shorthand,
25  transcript produced by Computer-Assisted Transcription.
```

```
                         Proceedings                    2
```

1           (In open court.)

2           (The interpreter previously sworn.)

3           THE COURTROOM DEPUTY:  The United States versus

4    Wei Gao, Docket Number 18-CR-408.

5           Counsel, please state your appearances, starting

6    with the Government.

7           MR. CAMPOS:  William Campos for the United States.

8    Good afternoon, Your Honor.

9           THE COURT:  Good afternoon.

10          MS. MALKO:  And Michelle Malko from Probation.

11   Good afternoon.

12          THE COURT:  Good afternoon.

13          MS. VAN MALDEN:  Good afternoon, Your Honor.  On

14   behalf of Ms. Gao, Stacey Van Malden.

15          THE COURT:  All right.  Good afternoon.

16          Good afternoon, Ms. Gao.

17          DEFENDANT GAO:  Good afternoon.

18          THE INTERPRETER:  Also present is Stephanie Liu,

19   Chinese interpreter.

20          THE COURT:  All right.  We also have a Chinese

21   interpreter doing Chinese simultaneous translation who has

22   been previously sworn.

23          Okay.  We are on for sentencing of both Ms. Gao,

24   and then we will following that up with her husband,

25   Mr. Xia.

```
                         Proceedings                       3
```

1          Do you want to proceed with Ms. Gao first?  It
2     doesn't matter to me.
3          MR. CAMPOS:  It's up to the Court.  I have no
4     preference.
5          THE COURT:  All right.  I assume Defense Counsel
6     has talked and that is the way you want to do it?
7          MS. VAN MALDEN:  Sure.
8          MR. CAMPOS:  Sure.
9          MS. VAN MALDEN:  It doesn't matter.
10         THE COURT:  Okay.  That's fine.
11         All right.  Let me start by reviewing the
12    documents that I have read in preparing for this sentencing
13    proceeding.
14         Ms. Gao, if any of the documents I recite are not
15    familiar to you, if you have not gone over them with your
16    attorney let me know, and we will take a break so that you
17    can do that.
18         All right.  I start with the presentence
19    investigation report of April 6th of this year.  There is
20    one addendum to that report dated September 22nd -- I'm
21    sorry, there are two addenda.  The second one is dated
22    October 20th, 2020.
23         I then have a sentencing memorandum from
24    Ms. Van Malden dated October 15th with letters attached to
25    it in Chinese and translated into English.

```
                       Proceedings                      4
```

1          I have the Government's sentencing memorandum of

2     October 23rd.

3          Now, I also have two other things:  I have a

4     memorandum from Probation talking about the child-care issue

5     with regard to the couple, the defendant couple.  And then I

6     believe I have shown Ms. Gao and her attorney the revised

7     probation sentencing recommendation in which Probation is

8     recommending one year and one day custody plus other terms,

9     of course.  That is what I have read in preparing for this

10    sentencing.

11          Is there anything else that I should be looking

12    at?

13               MS. VAN MALDEN:  No, Your Honor.

14               MR. CAMPOS:  Not from the Government.

15               THE COURT:  Okay.  Ms. Gao, are you familiar with

16    those documents, and have you discussed them with your

17    lawyer?

18               DEFENDANT GAO:  Yes.

19               THE COURT:  All right.  With regard to the facts

20    that will control sentencing with one exception that we will

21    be talking about in a little bit, I think there is no

22    dispute about the description of the offense or the defender

23    characteristics as set forth in the PSR and the addenda; is

24    that correct?

25               MS. VAN MALDEN:  That's correct, Your Honor.

Proceedings                                    5

1        MR. CAMPOS:  That's correct, Your Honor.

2        THE COURT:  All right.  We are going to talk about

3   whether the goods were imported for guideline purposes.  It

4   does not matter to me for non-guideline purposes.  So I will

5   adopt those portions of Sections A and C of the PSR that

6   describe the offense and the offender characteristics as my

7   findings of fact for purposes of this sentencing.

8        Now, with regard to the guidelines, which are, of

9   course, advisory and only one issue for me to consider in

10  determining the appropriate sentence, we have one adjustment

11  that is an issue.  Probation has proposed that there should

12  be two points added because these goods were imported.  I

13  think, Ms. Van Malden, your point is that she did not do the

14  importation --

15       And Can you remind me, Mr. Campos, where have I

16  come out on this in the other sentences, because I know you

17  are not putting the implication enhancement in?

18       MR. CAMPOS:  For the defendants in the prior cases

19  that we had not put -- that have gone to sentencing that

20  have not had -- the Government did not advocate for two

21  points.  The Court questioned the Government on that and

22  the Court accepted the Government's statements that for

23  those particular defendants in the past, it was the

24  Government's position that there was insufficient proof that

25  the defendant -- that the Government could prove that those

Proceedings                                              6

1   goods had been imported --

2            THE COURT:  Okay.

3            MR. CAMPOS:  -- and that the defendants knew that

4   those goods had been imported.

5            THE COURT:  All right.  I mean, this one seems

6   that these defendants were one more step removed from

7   importation than the wholesale defendants or the container

8   defendants, right?

9            MR. CAMPOS:  Indeed, Your Honor.

10           THE COURT:  Okay.  For that reason, I am going to

11  go along with the parties' guideline estimate as set forth

12  in their plea agreement, and that is --

13           And I am not finding it quickly.  Help me out,

14  Mr. Campos.

15           MR. CAMPOS:  Oh, Your Honor, the guidelines that

16  the Government had estimated and that the Court is going to

17  rule upon was an offense level of 22 minus the three levels

18  for acceptance of responsibility for a Level 19, with a

19  Criminal History Category 1, with a range of imprisonment of

20  30 to 37 months.

21           THE COURT:  Okay.

22           All right.  I adopt that as my finding, unless,

23  Ms. Van Malden, you have anything else you want to say about

24  it?

25           MS. VAN MALDEN:  No, Your Honor.

Proceedings                                7

1        THE COURT:  Okay.  That is my finding on the
2   guideline range.
3        Let me, then, hear from parties as to the
4   application of all of the 3553(a) factors.
5        I will start with you, Ms. Van Malden.
6        MS. VAN MALDEN:  Your Honor, I set forth most of
7   my arguments in my letter and I know that you've read it,
8   and so I don't want to reiterate what you have already read.
9        This is a case in which Ms. Gao mailed to -- she
10  had a shipping business and she was given boxes and she knew
11  there were counterfeit goods inside.  She didn't have
12  control over the amount or the value of those goods.  She
13  was essentially a middle person.  She took the goods from
14  them.  She shipped them.  Some of these goods went COD, just
15  like UPS does COD, FedEx does COD, and the U.S. Postal
16  Service does COD.  So that's not so beyond crazy that she
17  would do COD packaging for the shipper.
18       THE COURT:  Okay.  Then what did she do with the
19  COD?
20       MS. VAN MALDEN:  With the --
21       THE COURT:  COD, cash on delivery --
22       MS. VAL MALDEN:  Oh --
23       THE COURT:  -- what did she do with the cash?
24       MS. VAN MALDEN:  She gave it back to the shipper.
25  That's what the allegations by the Government are, she

Proceedings                                      8

1    didn't keep that money.

2         What the Government refers to as "unabashed

3    greed," Your Honor, was that Ms. Gao and her husband,

4    Mr. Xia, over a four-year period made $90,000 from the

5    shipping of these goods.  Now, if you break that down each

6    year, that means each year they made a whopping $22,500.

7    And if you split that again between the two of them, right,

8    each of them made about $11,000.  So their unabashed greed

9    resulted in them earning approximately one/third of the

10   minimum wage in New York State.

11        THE COURT:  Okay.  Well, do you have any idea what

12   the gross revenues were for the legitimate part of the

13   business?

14        MS. VAN MALDEN:  There was not a lot, which is why

15   she -- this is one of the reasons why she ended up shipping

16   these types of goods.  She didn't do very well in the

17   business.  She opened it with all the best of intentions.

18   She was not doing well.  She was not bringing money home.

19   Ultimately, she closed it, not because of this case, but I

20   think they closed it before the case began or right around

21   the same time as the case began because they weren't making

22   any money.  And it wasn't the type of closing -- it was a

23   corporation.  They actually had their accountant put the

24   right paperwork in.  This was a legitimate business.

25   Unfortunately, a large portion of the business involved

1   these counterfeit goods.

2          Now, the Government may also point out that there

3   was a one-off where they may have sold some belts or some --

4   I think it was belts that were counterfeit.  That was kind

5   of a one-off, but they didn't make a ton of money from that.

6   So essentially what you have is literally a mom-and-pop shop

7   that was shipping goods.

8          Did they import?  No.  Did they have anything to

9   do with the containers?  No.  Did they have anything to do

10  with the fraudulent paperwork for the people at the ports?

11  No. They had done small bits, as kind of the people that

12  shipped.  They didn't earn money on either end.  What they

13  got was money for their shipping.  There's been no evidence

14  that they charged any more or received any more from these

15  packages versus other packages.  So unabashed greed is

16  really not the reason for this crime.  This was people

17  trying to have a business and then getting this opportunity,

18  granted not a legal opportunity, to, I guess, earn some

19  money, put some food on the table for their kids.

20         So they knew that the items were counterfeit.

21  They knew that it wasn't legal to have counterfeit goods,

22  had no idea they were looking at ten years in jail for it,

23  at least not that type of thing.  That's not the kind of

24  people these people are.

25         THE COURT:  You know, I am going to ask Mr. Xia's

1  lawyer about this as well, but it does seem to me that they

2  were living higher than the way you are describing it.  You

3  know, they seemed to have a nice house in Syosset, and the

4  lifestyle that is not -- you know, it's not superluxurious,

5  but it's also not hand-to-mouth.

6          MS. VAN MALDEN:  Well, it's a lifestyle, which --

7  there's more than just their immediate family with them.

8  And they also receive -- they were living with Mr. Xia's

9  parents, so it was a community.  It's more of a community

10 effort.  And they also had some -- their credit card

11 expenses.  So this is not like -- it's not like they were

12 just -- it's a community effort; and when you put everything

13 together, you can live a little better than you can on your

14 own.  So that's how I would address that particular concern

15 for the Court.

16         The other thing that brings Ms. Gao specifically

17 out of the heartland cases is her health issues, and I've

18 been here at least once before asking if Ms. Gao can go to

19 China to get treatment for her thyroid cancer.  And she was

20 able to get the treatment that she needed here, but after

21 the PSR was written, she had to go back for another surgery

22 right now, and she's had two of these iodine 131 treatments.

23 So in January, she needs to go back to see if they're

24 working.  And I put a paragraph in here about that cancer

25 treatments in our prison system is not very good.  And I

Proceedings                              11

1   know, Your Honor, might say, Well okay, she'll go in after.

2   But it's an ongoing thing.  And then they do have two

3   children.  They need to be cared for.

4            Mrs. Xia, Mr. Xia's mother, who recently came out

5   of the hospital, the reason she's here today is they didn't

6   have anybody to keep an eye on her while they were here

7   today.

8            THE COURT:  What happened to the community?

9            MS. VAN MALDEN:  The community over time has just

10  dissipated, and the COVID has made people stay away.  For

11  example, their sister, Mr. Xia's sister who owns

12  99 Cent Store, is in contact with the public every day.

13  Ms. Gao and her mother-in-law, they're high-risk people.

14  You don't want a person who is going out in the world every

15  day coming home and spreading COVID-19.

16           THE COURT:  Well, I think Probation had some

17  concerns, or at least I inferred there were such concerns,

18  about the fact that Ms. Gao is a home attendant for a

19  relative and getting paid, but I do not know how she is

20  getting paid?

21           MS. VAN MALDEN:  I can tell you I have some

22  experience with that personally, if you're interested.

23           THE COURT:  Yes.

24           MS. VAL MALDEN:  What New York State is doing with

25  Medicaid patients that are being treated at home, because

Proceedings                           12

1   New York believes that it's better to keep people at home --

2   it's cheaper and safer to keep them at home than put them in

3   a facility.  So what they do is they have set this up

4   formally, members are permitted to be the home-health-care

5   attendant and to be paid the fee, whatever it is, $8, or

6   minimum wage, $15 an hour, that they would be paying to an

7   outside nurse.  And it's a program -- it's a legitimate

8   program in New York State.  And if I wasn't busy being a

9   lawyer, I probably would have done that for my mom before

10   she passed.  But, I mean, it is definitely something that my

11   brother and I looked into, and I know it is a legitimate

12   thing.  So that is a thing that New York State has started,

13   and it's actually quite popular.

14         So if Probation wants to a look, it's under

15   City of New York State under Medicaid and health care and

16   home-health care, and that's -- it's a thing.  It really is.

17   So that's not crazy.  That does happen.

18         But she has these health issues.  She's a great

19   mom.  She's taking care of her mother-in-law.  And when we

20   look at -- and I know I gave you a bunch of cases.  Now,

21   some of those will be -- were pre-advisory guidelines, I

22   think.

23         THE COURT:  Okay.

24         MS. VAN MALDEN:  And that's --

25         THE COURT:  No, I understand.  But really, I could

Proceedings                                    13

1   come up with a list of cases that are different than your

2   list and suggest something very different, right?

3            MS. VAN MALDEN:  Of course.

4            THE COURT:  The individual cases in terms of

5   disparity elimination are not all that helpful, I generally

6   find.

7            MS. VAN MALDEN:  Well, what we've looked to are

8   the sentences that you have already given out in this

9   case --

10           THE COURT:  Yes.

11           MS. VAN MALDEN:  -- and in this case, there were

12  two -- there was a probation and a time served.  And I would

13  say that compared to even the two individuals who received

14  probation who were on the importation end, on the container

15  end, that their act in this very big conspiracy were less

16  than that, and as a result, they would deserve similar

17  sentencing because they were not involved in the importation

18  and they were not involved in the containers and they didn't

19  go to China to order the goods.  They simply took the goods,

20  put them in a -- they didn't even put them in the box.  They

21  came in a box and they sent them to be shipped.

22           THE COURT:  But on the other hand, the amount of

23  money involved for these two defendants is higher than it

24  was for any of the others.  And the others were -- I mean, I

25  think one of them had 400,000, one of them had 150, one of

1  them had 250.  I have got 550 for each of these two

2  defendants, plus I have got higher gains by these two

3  defendants, net amount gains.  You know, it's 90,000 as

4  compared to the ones I gave probation and time served to,

5  which were about half of that, or less than half of that,

6  so...

7          Well, I tend to agree with you, it's about the

8  same.  There may be some more culpable conduct on the two

9  that I have sentenced to probation and time served.  But I

10 think it comes out in a wash, pretty much.

11         MS. VAN MALDEN:  We can't argue with you on that,

12 Your Honor.

13         THE COURT:  Yes.

14         MS. VAL MALDEN:  The only thing that I can point

15 out about the higher amounts is that they didn't really have

16 any control over the value of what was shipped.

17         THE COURT:  Yeah.  I mean, it's kind of like a

18 courier case that way, right?  You know, they didn't really

19 care what was in the trailer because they were getting paid

20 regardless.  But it is a relevant factor in determining the

21 amount of damage to the victims that stood to be done,

22 right?

23         MS. VAN MALDEN:  Certainly.  And you can -- they

24 can pay restitution to their victims, which there is a

25 restitution order, I'm sure, that will be part of their

1    sentence.  So I would suggest that that would be a more

2    appropriate way to address that particular issue.

3              THE COURT:  Okay.

4              MS. VAN MALDEN:  So, Your Honor, I'm not going to

5    take up too much more of your time.  I think that we've

6    covered everything.

7              So unless you have any further concerns or

8    questions, I'm just going to ask for probation.  Thank you,

9    Your Honor.

10             THE COURT:  Thank you, Ms. Van Malden.

11             Ms. Gao, is there anything that you would like to

12   say?  I have read your letter, of course, but I am happy to

13   hear from you further if you would like me to.

14             DEFENDANT GAO:  I want to apologize to Your Honor

15   about this case, because right now my children are still

16   very young, and also my mother-in-law is facing serious

17   health issues.  I hope that you grant me an opportunity so

18   that I could still take care of them, and then also I would

19   be able to be in a position to take good care of my children

20   as well.

21             I know that I'm wrong about what I've done.  And

22   also I want my children never to commit the same crime of

23   going through the same path as I did right now.

24             THE COURT:  Okay.  Thank you, Ms. Gao.

25             DEFENDANT GAO:  Thank you.

Proceedings                                                    16

1          THE COURT:  All right.  I'll hear from the

2    Government.

3          MR. CAMPOS:  Thank you, Your Honor.

4          Your Honor, the Government has put its reasons for

5    in the letter.  I would just note that while this defendant,

6    obviously, did not smuggle the goods into the country, but

7    the defendant is also not just a street-level seller.

8    Instead, she and her husband had a business model for

9    shipping almost exclusively counterfeit goods throughout the

10   country.  That was their model.  The goods were not isolated

11   here in New York.  You know, they became like the FedEx for

12   counterfeit-good shippers.  And I think that is a unique

13   category of individuals that are in an important link in

14   this -- you know, the whole chain of distribution.  So

15   consequently without them, there would need to be somebody

16   else.

17         And why them?  They knew what they were shipping.

18   They didn't stop that.  They did a couple of interesting

19   things with the money orders and all of that, but it -- to

20   hide the identity of the people shipping.  So to say that

21   they were kind of like a street seller, that's not quite

22   right.  I mean, we're not suggesting that they were

23   importers, but they were an important cog.

24         And the other thing I would just note, Your Honor.

25   I think Counsel talked about the amount of money.  This

Proceedings                                    17

 1    defendant and her husband who ran the business, each agreed

 2    to a $90,000 forfeiture amount.  So in terms of the money, I

 3    think that may be slightly off.  But, Your Honor, the

 4    Government --

 5            THE COURT:  They each got 90,000 out of this or

 6    because they are jointly liable for the 90,000, that they as

 7    a couple got out of it?

 8            MR. CAMPOS:  No, because we estimated that they

 9    each got 90,000.

10            THE COURT:  Okay.  Anything further?

11            MR. CAMPOS:  No, Your Honor.

12            THE COURT:  Okay.

13            All right.  I just want to ask Probation a couple

14    of questions.  The admission on the sentencing

15    recommendation and the memo that I got in the Xia case

16    helped me deal with this case from Probation was helpful.

17            But I am wondering if you could give me any more

18    insight as to any concerns Probation has about

19    the undisclosed support mechanisms for this family, whether

20    financial or personal?

21            MS. MALKO:  Well, in this case --

22            THE COURT:  You can sit down.  That's fine.

23            MS. MALKO:  I'm sorry.

24            I guess specifically to do with more of the

25    restitution order and making sure that that's put out

1  appropriately, and I think the appropriate 10 percent --

2  once restitution is starting to get out, that it is paid at

3  the appropriate 10 percent monthly, we would need a personal

4  financial statement.  We did received one from Ms. Gao, but

5  we did not receive one from her spouse.

6          But that was the only concern, unless Your Honor

7  has --

8          THE COURT:  Well, you know, you are suggesting, I

9  think, that there are sufficient resources here so that for

10  at least a short incarceratory sentence, the children and

11  mother would be taken care of as long as I do not put

12  husband and wife into custody at the same time; is that a

13  fair conclusion from what I'm reading?

14          MS. MALKO:  Essentially, yes, because they are

15  both working.  Because the husband works for his business,

16  his family business, and he would likely not be losing that

17  job once he is, you know, released after having been

18  incarcerated.  And the wife is essentially working with her

19  mother-in-law, you know, taking care of her at the house.  I

20  think that that would be it.

21          But we did say that it is difficult with all the

22  finances that we have received to make a determination if

23  they would be able to be cared for in terms of either to pay

24  for any kind of extra child care, such a live-in nanny or a

25  babysitter.  It's obviously difficult for us to make a

Proceedings                                    19

1    decision based on the finances that we have received thus

2    far.

3              THE COURT:  Okay.

4              All right.  Ms. Van Malden, if you want to say

5    anything to that, I will give you a chance.

6              MS. VAN MALDEN:  I think I have covered

7    everything, Your Honor.

8              THE COURT:  All right.  I have considered all the

9    factors under *18 U.S.C., Section 3553(a),* including the

10   advisory guidelines.  A guideline sentence here I think is

11   not necessary to accomplish the goals of sentencing, but I

12   do think a short incarceratory sentence is appropriate.

13             I am troubled by someone in this position getting

14   as much as $90,000 for shipping these -- carrying these

15   counterfeit goods.  And I don't think that that is something

16   where I can just say no custody is appropriate.  I am not

17   all that worried about Ms. Gao repeating the conduct.  I

18   think she is likely not to repeat it.  But I do think, you

19   know, and I have said this in the other cases as well --

20   some of the other cases, a message needs to be sent out

21   that, you know, this kind of almost epidemic criminal

22   activity, very pervasive criminal activity just cannot be

23   done because there are too many companies who have workers

24   who get injured by doing this kind of thing.  So I think the

25   crime, you know, it's a federal crime for a reason.  This

1   could be punished civilly only if that is what Congress

2   wanted to do, but it did not.  So I do not think a guideline

3   sentence is necessary.  I do think that some custody is

4   appropriate.

5           I am, therefore, going to impose a sentence of six

6   months' custody; restitution in the amount of $275,000

7   jointly and severally with the co-defendants.  That is due

8   immediately, but payable at a rate of $25 per quarter while

9   in custody and at a rate of 10 percent gross monthly income

10  while on supervised release.  She has also got to comply

11  with the order of forfeiture that I have signed.

12          I am also going to impose one year of supervised

13  release which has compliance with forfeiture and

14  restitution; also full financial disclosure, including

15  comingled income, expenses, assets and liabilities, and tax

16  returns.  Other than the accounts that are set forth in the

17  presentence report, she is prohibited from opening or

18  maintaining any other accounts without approval of

19  Probation.  She has got to fully cooperate with the

20  probation officer in investigating any financial dealings

21  she has, including upon request providing truthful monthly

22  statements of her income and expenses.  She has also got to

23  sign any necessary documents to make that easier for

24  Probation.

25          Now, I also understand that she is a green

```
                        Proceedings                    21
```

1   cardholder.  In the event that she is removed from the

2   country, she may not enter illegally.  She may not re-enter

3   illegally, and she has to comply with all of the

4   instructions of the immigration authorities.

5          I am not going to impose a fine, because I do not

6   think she would be able to afford it considering her

7   restitution obligation.  I will impose the mandatory $100

8   special assessment.

9          Now, in terms of surrender date, what I would like

10  to do is this, and I am open to suggestions, Ms. Van Malden:

11  Particularly because of her medical treatment, I would like

12  to delay her surrender date to a date 60 days after her

13  husband is released from custody if I sentence him to

14  custody, or 60 days after today if I don't sentence him to

15  custody.  That leaves us with an open-surrender date,

16  because I have not sentenced her husband yet.  If you

17  consent, what I will do is simply say I will enter a

18  surrender date in the judgment that says what I have just

19  said, you know, 60 days after the husband is no longer in

20  custody.

21         If you do not consent, then stand by.  I will

22  sentence the husband.  I will re-call this case, and then I

23  will, again, impose that same condition but with a definite

24  date at that point.  So I don't really see a reason to

25  reconvene this for that purpose, but it is your choice as to

Proceedings                                        22

1    what you want to do.

2          MS. VAN MALDEN:  The only thing that I would ask

3    is if it's 60 days from today, then if you could make it 90

4    days or make it an even larger surrender date because of her

5    treatment in January?

6          THE COURT:  Yes, that is fine.

7          I should also say in terms of her treatment, I am

8    elastic on the surrender date.  You know, you can come to me

9    in March, I will give you until March.  That's fine.  And if

10   she is still getting treatment, I might delay it further.

11   Okay?  Because I do want her to have her treatment.  I think

12   that is important.  I don't want her to start her custody

13   until she gets that.  Depending what happens with her

14   husband, that may not be a factor.  Okay?  It may be all

15   done, depending on what I do with him.

16         But certainly I will set a March 1st -- well,

17   let's say I set -- well, I don't want to set March 1st

18   because if I sentence him to more time, I have them in at

19   the same time.

20         MS. VAL MALDEN:  Yes.

21         THE COURT:  So unless you want me to reconvene, I

22   will just tell you it will be no earlier than the end of

23   March.

24         MS. VAL MALDEN:  Okay.

25         THE COURT:  Okay?

Proceedings                              23

1          MS. VAL MALDEN:  All right.  Thank you,

2    Your Honor.

3          THE COURT:  And as late as 60 days after her

4    husband is released into custody, you know, whichever is

5    longer.

6          MS. VAN MALDEN:  That sounds good.

7          THE COURT:  Okay.

8          MS. VAL MALDEN:  All right, Your Honor.  That's

9    great.

10          THE COURT:  Well, that is as great as possible

11    when somebody is being sentenced --

12          MS. VAL MALDEN:  Oh, right.

13          THE COURT:  -- to federal prison.

14          MS. VAN MALDEN:  Yes, Your Honor, that is what I

15    meant to say.

16          THE COURT:  All right.  And then we have open

17    counts, Mr. Campos?

18          MR. CAMPOS:  We do, Your Honor.

19          THE COURT:  Okay.

20          MR. CAMPOS:  And the Government moves to dismiss

21    those open counts.

22          THE COURT:  Those and the underlying indictment

23    are dismissed.

24          All right.  So, Ms. Van Malden, is there anything

25    further before I advise Ms. Gao of her appellate rights at

Proceedings                                    24

1    this time?

2          MS. VAN MALDEN:  No, not from the defendant,

3    Your Honor.

4          THE COURT:  Thank you.

5          Is there anything further, Mr. Campos, before I

6    advise her of her appellate rights?

7          MR. CAMPOS:  No, Your Honor, not from the

8    Government.

9          THE COURT:  Thank you.

10         All right.  Ms. Gao, by virtue of your plea

11   agreement, you have waived your right to appeal your

12   conviction and sentence.  However, if you think there was

13   something fundamentally wrong with either your conviction or

14   your sentence, you can attempt to appeal by filing what is

15   called a Notice of Appeal within 14 days.  Ms. Van Malden

16   will do that for you if you ask her to.  If you certify to

17   the Clerk of the Court that you cannot afford a lawyer, the

18   Clerk will do it for you.  Or you can get the one-page form

19   yourself and do it.  But it remains your responsibility no

20   matter how you delegate it to make sure that that notice is

21   filed within 14 days to get the appeal process going.

22   Otherwise, you will have permanently waived any right to

23   appeal that you might have.

24         All right.  And did I impose the special

25   assessment earlier?

Proceedings                                    25

1          MR. CAMPOS:  You did, Your Honor.

2          THE COURT:  Okay.  Thank you.

3          Is there anything further, Ms. Van Malden?  It

4    looks like she may have a question.

5          Do you want to check with her?

6          MS. VAL MALDEN:  Sure.

7          THE COURT:  Go ahead.

8          MS. VAL MALDEN:  Thank you, Your Honor.

9          (Pause in proceedings.)

10          MS. VAL MALDEN:  (Indicating.)

11          THE COURT:  Do you have anything further,

12    Ms. Van Malden?

13          MS. VAN MALDEN:  We have nothing further,

14    Your Honor.

15          THE COURT:  All right.

16          MS. VAL MALDEN:  Thank you, Your Honor.

17          THE COURT:  Okay.

18          MR. CAMPOS:  Thank you, Your Honor.

19          THE COURT:  Thank you very much.

20          We are adjourned.

21          (Matter concluded.)

22                         --ooOoo--

23    *I (we) certify that the foregoing is a correct transcript*
      *from the record of proceedings in the above-entitled matter.*

24

25    */s/ David R. Roy*                    *January 7, 2021*
           *DAVID R. ROY*                        *Date*

*David R. Roy, RPR, CSR, CCR*
*Official Court Reporter*